UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PRINCE EDWARD JONES,

               Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et al.*,

               Defendants.

Civil Action No. 11-0275 (BAH)

## MEMORANDUM OPINION

Pending before the Court is the motion for summary judgment [Dkt. #47] filed by the sole remaining defendant in this case, Metropolitan Police Department Officer Jarlith Cady.[1] For the reasons discussed below, the motion will be granted.[2]

### I. BACKGROUND

The events giving rise to the plaintiff's complaint began on February 19, 2006, when Officer Jarlith Cady ("Cady") of the Metropolitan Police Department ("MPD") responded to a 911 call to plaintiff's residence at 4452 B Street S.E., Apartment #102, in Washington, D.C.

---

[1] The Court granted the motion to dismiss filed on behalf of the District of Columbia and the Metropolitan Police Department, and dismissed Detective Kevin Tighe as a party to this action. *See Jones v. District of Columbia*, No. 11-0275, 2011 WL 2222354 (D.D.C. June 3, 2011). Plaintiff did not oppose the motion to dismiss filed on behalf of the United States Attorney's Office for the District of Columbia and Janine Scott, and the Court granted their motion as conceded on September 1, 2011. ECF Nos. 44-45. Officer Cady is the sole remaining defendant.

[2] In light of the Court's ruling on Cady's motion to dismiss, plaintiff's "Motion for Application of Appointment of Counsel" and "Motion to Subpoena Transcrip[t]s Records," ECF Nos. 49-50, will be denied as moot.

1

### *A. Plaintiff's Allegations*

The plaintiff allegedly called "911 . . . about a female person attempting to burglarize his apartment." Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 3.  While he remained "on the phone with [the] 911 dispatcher," the plaintiff was told that police had arrived on the scene "but couldn't enter the building [because] the front door was locked." *Id.*  The plaintiff met Cady at the door of the apartment building, *id.*, only to find that Cady brought with him "the female who had attempted to break into his residence. Compl. ¶ 9.  The plaintiff identified the burglary suspect as Patrice Taylor. Pl.'s Opp'n at 3.  "Instead of investigating [Patrice Taylor] for the Burglary-in-process call, . . . Cady allowed [her] to manipulate him to break into the Plaintiff[']s residence" on her behalf and to search the premises. *Id.* ¶ 10.  Cady "seize[d] Plaintiff's house keys by force, open[ed] plaintiff[']s front door . . . and . . . search[ed his apartment] without probable cause or warrant." *Id.* ¶ 11.

The plaintiff further alleges that the next day, February 20, 2006, Detective Kevin Tighe ("Tighe") obtained a search warrant based on "false and fraudulent information that lacked probable cause" as it was based on unreliable "second hand information." *Id.* ¶ 12.  Cady and Tighe conducted a second search of the plaintiff's apartment on that same date. *Id.* ¶¶ 12-13.  According to the plaintiff, Tighe exceeded the scope of the warrant and seized items that were not listed in the warrant. *Id.* ¶¶ 14-15.  As a result, the "[p]laintiff was arrested . . . and falsely charged" with a crime. *Id.* ¶ 16.  On February 22, 2006, the Superior Court of the District of Columbia "found that there was no probable cause and dismissed all charges" against plaintiff. *Id.* ¶ 17.

"On or about March 16, 2006[,] The State of Maryland[,] Prince George[']s County[,] . . . issued an arrest warrant for the plaintiff." *Id.* ¶ 18. According to the plaintiff, Cady and Tighe turned over property seized from the plaintiff's apartment to "the State of Maryland Prince Georges [sic] County States Attorneys [sic] Office [which] wrongfully used the illegally obtained property" as evidence against him. *Id.* "Since March 16, 2006, [p]laintiff has been incarcerated in the State of Maryland." *Id.* ¶ 6.

### B. *Defendant's Representations*

Cady's version of events is set forth in the police report he filed on February 20, 2006:

> WHILE ON ROUTINE PATROL IN THE SIXTH DISTRICT . . . OFFICERS CADY AND . . . CIPOLARI DURING THE MIDNIGHT TOUR ON 2/19/06 . . . IN FULL UNIFORM . . . THE SIXTH DISTRICT DISPATCHER ADVISED THAT THERE WAS A BURGULARY [sic] IN PROGRESS AT 4452 B ST[.] SE.
>
> ONCE ON THE SCENE OFFICER CADY [and three other officers] WERE MET BY D-1 [plaintiff] AND C-1 [complaining witness Patrice Taylor] AT THE FRONT DOOR OF 4452 B ST[.] SE. [Patrice] STATED THAT HER SISTER, D-2 [Porsha Taylor] WAS INSIDE THE APARTMENT AND SHE COULD HEAR HER SISTER BEING CHOKED FROM OUTSIDE THE APARTMENT[']S BEDROOM WINDOW. [Patrice] ALSO STATED THAT SHE HAD SPOKE [sic] TO HER SISTER ON [plaintiff's] PHONE EARLIER AND THAT SHE HAD ASKED HER TO COME OVER TO HER APARTMENT (4452 B ST SE #102).
>
> [Plaintiff] WAS ASKED BY THE OFFICERS IN FRONT OF THE APARTMENT IF THEY COULD ENTER THE APARTMENT TO CONTINUE THE INTERVIEW AND TO CHECK ON THE WELFARE OF [Porsha]. [Plaintiff] STATED THAT "YOU CAN[']T COME IN" (REFER[R]ING TO THE OFFICERS), [and plaintiff] MADE SEVERAL STATEMENTS THAT THE APARTMENT WAS HIS AND THAT THE OFFICERS HAD NO RIGHT TO ENTER THE APARTMENT.
>
> . . . CADY [and two other officers] ENTERED THE APARTMENT AND BEGAN TO SEARCH FOR [Porsha]. THE

> MAIN LIVING AREA AND BEDROOM HAD NO LIGHTS ON, MAKING IT VERY DIFFICULT TO SEE. WHILE SEARCHING FOR [Porsha] IN THE BEDROOM . . . CADY BELIEVING HE HAD FOUND [HER] HIDING UNDERNEATH THE BLANKET ON WHAT . . . CADY BELIEVED TO BE A REGULAR MATTRESS ON THE FLOOR . . . CADY PUSHED THE MATTRESS WHICH TURNED OUT TO BE A SEMI-INFLATED AIR MATTRESS WITH HIS FOOT. THE BLANKET AND MAT[T]RESS WERE LIGHTER THAN EXPECTED AND MOVED SEVERAL FEET AWAY FROM A WALL.
>
> . . . CADY FOUND A LOADED REVOLVER . . . ON THE FLOOR AND ANNOUNCED HIS FINDING TO THE OTHER OFFICERS. WHILE SEARCHING FOR [Porsha] . . . CADY FOUND A CLEAR[] PLASTIC BAG WITH 10 ROUNDS [of ammunition] ON A SHELF IN THE CLOSET. [Porsha] WAS FOUND SEVERAL MINUTES LATER HIDING . . . UNDERNEATH THE KITCHEN SINK . . . .
>
> WHILE [plaintiff] WAS IN THE STAIRWELL WITH [another officer] HE MOUTHED "IM [sic] GOING TO KILL YOU" TO [Patrice] WHO WAS ALSO STANDING IN THE STAIRWELL. [Patrice] BECAME VISABLE [sic] UPSET AND STARTED YELLING AT [plaintiff] . . . .
>
> [Plaintiff] WAS PLACED UNDER ARREST AND TRANSPORTED TO THE SIXTH DISTRICT FOR PROCESSING . . . .

Mem. of P. & A. in Supp. of Def. Officer Jarlith Cady's Mot. for Summ. J. ("Def.'s Mem."), Ex. 2 (Arrest/Prosecution Report, ID No. 490929, dated February 20, 2006) at 1-2 (emphasis in original). Although both the plaintiff and Porsha Taylor "stated that they lived inside of the apartment," neither admitted ownership of the handgun. *Id.*, Ex. 2 (Arrest/Prosecution Report, ID No. 556896, dated February 20, 2006) at 1. Both were arrested and charged with carrying a pistol without a license ("CPWL"). *Id.*, Ex. 2 at 2. The arrests took place at approximately 11:49 p.m. on February 19, 2006. *See id.*, Ex. 1 at 1 & Ex. 2 at 1.

4

The following morning, Tighe applied for and obtained a warrant for the search of the plaintiff's apartment. *See id.*, Ex. 3 (Affidavit in Support of an Application for a Search Warrant and Search Warrant). In relevant part, the warrant application read:

> On Sunday, February 19, 2006, at approximately 2349 hours, [MPD officers] responded to 4452 B Street, S.E., #102, Washington, D.C. for the reported female knocking loudly at the front door. Once at the location the [officers] were met by the person that had called the police, [plaintiff], and the subject that had been knocking on the front door, [Patrice Taylor]. [Patrice] told the police that she wanted them to check on the welfare of her sister, [Porsha Taylor], because she believed that [plaintiff] had been chocking [sic] her and she had heard this from outside the partment. [Patrice] also provided information to the police that according to several other witnesses that had been at the apartment earlier in the day and they had observed [plaintiff] choking [Porsha] and striking her with a belt. [Patrice] also told the police that [plaintiff] had guns in the apartment. While searching for [Porsha] the officers uncovered a loaded .357 revolver and additional rounds of ammunition in the bedroom of the apartment . . . . [Patrice] was shown the firearm that had located in the apartment and stated that she had previously seen [plaintiff] with that weapon when he was at her house. [She] also stated that she had also seen [plaintiff] with a 9mm handgun, which she stated that [plaintiff] carries with him all the time. [She] stated that she knows that [plaintiff] keeps this gun in a black book bag in the apartment . . . . [Patrice] also stated that she believed that [plaintiff] also has robbed people in the past.

*Id.*, Ex. 3 (Affidavit) at 1. The judge signed Tighe's warrant application at 10:45 a.m. on February 20, 2006, and police executed the warrant at 11:50 a.m. on February 20, 2006. *See* Def.'s Mem., Ex. 3. Among the items seized were a black book bag, ammunition, and cash. *Id.*, Ex. 3 (Search Warrant – Return).

Although the Superior Court found no probable cause and dismissed the CPWL charge against the plaintiff on February 22, 2006, additional charges were filed in the case on May 1,

2006. *See id.*, Ex. 5 (Superior Court docket entries dated May 1, 2006). The plaintiff pled guilty to a misdemeanor, attempted threats to do bodily harm, on February 6, 2007. *Id.,* Ex. 5at 2.

### C. *Plaintiff's Fourth and Fifth Amendment Claims*

The complaint alleges that Cady violated the plaintiff's Fourth Amendment right to be free from unreasonable search and seizure by entering his apartment on February 19, 2006, without the plaintiff's consent and without a warrant, and by seizing his gun and ammunition. For these alleged constitutional violations, the plaintiff demands damages of $4,000,000.00. Compl. ¶ 33. In addition, the plaintiff alleges that Cady violated his Fifth Amendment right to due process "by abuse of authority, *id.* ¶ 22, for which the plaintiff demands damages of $2,000,000.00, *id.* ¶ 25. Cady moves for summary judgment on the ground that qualified immunity protects him from suit. *See* Def.'s Mem. at 1.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are material, the Court looks to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere existence of a factual dispute does not bar summary judgment. *See id.* A genuine dispute is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* The Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of his position. *Id.* at 252. He must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he cannot rely on conclusory assertions without any factual basis in the record to create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

### B. Qualified Immunity

"Qualified immunity is a defense that shields officials from suit if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (quoting *Ortiz v. Jordan*, __ U.S. __, __, 131 S. Ct. 884, 888 (2011)) (internal quotation marks, brackets, and citations omitted); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Accordingly, the Court must "resolv[e] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This protection is afforded to government officials whether their "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citations and internal quotation marks omitted); *see Brinegar v. United States*, 338 U.S. 160, 177 (1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."). "[A]ll but the plainly incompetent or those who knowingly violate the law" may enjoy the protection of qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, __ U.S. __, __, 132 S. Ct. 1235, 1245 (2012) (brackets, internal quotation marks, and citation omitted). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-step analysis for resolving government officials' qualified immunity claims. First, the court decides "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 201. If the plaintiff satisfies this first step, the court then decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* The sequence of this analysis no longer is mandatory, and now the court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

In this case, the Court opts "first [to] determine whether the facts, construed in the light most favorable to [the plaintiff] show that [Cady] violated a constitutional right, and second, whether that constitutional right was clearly established at the time of the incident. If the answer to either of these questions is no, then the defense motion for summary judgment must be granted because [Cady is] entitled to qualified immunity." *Wesby v. District of Columbia*, 841 F. Supp. 2d 20, 36 (D.D.C. 2012) (citing *Barham v. Salazar,* 556 F.3d 844, 847 (D.C. Cir. 2009)).

### C. Qualified Immunity Protects Cady from Suit

In order to establish a claim against Cady under 42 U.S.C. § 1983, the plaintiff must demonstrate that Cady, acting under color of the law of the District of Columbia, deprived him of "rights, privileges, or immunities secured by the Constitutions and laws" of the United States. *Id.* This discussion begins with the proposition that, ordinarily, a search of a person's home and seizure of his property by police without a warrant violate that person's Fourth Amendment right to be free from unreasonable search and seizure. U.S. CONST. amend. IV; *see Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."). Cady argues that his "entry was lawful pursuant to the emergency exception" to the warrantless entry rule. *See* Def.'s Mem. at 6.

Exigent circumstances are present when the police have "an urgent need or an immediate major crisis in the performance of duty affording neither time nor opportunity to apply to a

magistrate" for a warrant. *United States v. Johnson*, 802 F.2d 1459, 1461 (D.C. Cir. 1986) (brackets, internal quotation marks and citations omitted). For example, police "may make a warrantless entry onto private property . . . to prevent the imminent destruction of evidence . . . or to engage in hot pursuit of a fleeing suspect." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks and citations omitted). Another "exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Id.*; *see In re Sealed Case 96-3167*, 153 F.3d 759, 766 (D.C. Cir. 1998) (finding that officers' belief that defendant was burglarizing a house with the intent either to steal property or to injure occupants was objectively reasonable and "constitutes exigent circumstances sufficient to permit warrantless entry"). The police officer must have had a reasonable belief that exigent circumstances existed. *See United States v. Goree,* 365 F.3d 1086, 1090 (D.C. Cir. 2004). "And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (citations omitted).

There is no genuine issue in dispute as to the material facts of this case. The plaintiff states that he made a 911 call to police about a burglary in progress. Cady represents, *see* Def.'s Mem., Ex. 2, and the plaintiff concedes, *see* Pl.'s Opp'n at 4, that Patrice Taylor heard her sister being choked inside the apartment, that other people had seen plaintiff choking and striking Porsha Taylor with a belt earlier in the day, that the plaintiff kept guns in his apartment, and that the plaintiff refused Cady's requests for his consent to enter the apartment. Cady and the other officers entered the plaintiff's apartment without a warrant, searched the apartment, found Porsha Taylor hiding under the kitchen sink, found a handgun and ammunition in plain view, seized the handgun and ammunition, and arrested the plaintiff and Porsha Taylor.

Based on these facts, the Court concludes that Cady had an objectively reasonable belief that exigent circumstances existed, namely that Porsha Taylor had been injured or was at risk of injury.  These circumstances justified Cady's warrantless entry into the plaintiff's apartment and his limited search for Porsha Taylor in places where an adult could have been hiding.  Although Cady had not secured a warrant prior to his initial entry into the plaintiff's apartment, exigent circumstances obviated the need for a warrant at that time.  Cady's search of the apartment on the following day also is justified –  the search and seizure of the plaintiff's property took place pursuant to a warrant issued by a Superior Court judge.  "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."  *Messerschmidt*, 132 S. Ct. at 1245.

### III.  CONCLUSION

The Court concludes that Cady is protected by qualified immunity.  Accordingly, his motion for summary judgment will be granted.  An Order accompanies this Memorandum Opinion.

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

DATE:  September 21, 2012